## RUSSELL v. TAYLOR.

1. *Steamboat owners* are embraced within the meaning of the Act of 1822, sec. 1. (Rev. Co. of '25,—page 747,) concerning slaves, and an action on the case lies against them as well ss ferrymen and owners of small craft, for violating its provisions.

2. No previous conviction in any other mode is necssary to sustain the action on the case, under this statute.

Points and citations of authorities, made by *Geyer*, attorney for plaintiff:

1st. Because the facts established a cause of action under the statute; Rev. C. 1825, 747; and no previous conviction was necessary; Mellen v. Conway, 2 Missouri Decisions, 213.

2d. Independent of the statute, the plaintiff was entitled to recover for carrying away, and harboring, his slave.

3d. The instruction was an invasion of the right of the jury to determine the facts; see the cases of Cunningham v. Sublette, Speed v. Herrin, decided by this court.

Points, and citations of authorities, made by *Darby* and *Hamilton*, attornies for defendant:

1st. The statute is intended to apply to offences committed by ferrymen, as a class, and to other persons in their service, acting in that capacity.

2d. The remedy given by statute, though cumulative, is dependent; and however it may conflict with the general rules of pleading and evidence, the statute contemplates a previous conviction to be alleged and proven by plaintiff.

3d. There was no evidence of the slave being taken across the Mississippi river into the State of Illinois, or elsewhere, beyond the said river, as alleged in the plaintiff's declaration; and

4th. Atmost there was a mere inference of an intention so to do, by engaging the slave as a hand on board the boat; but, in acts *mala in se*, the intent governs, while in acts *mala prohibita*, the only inquiry is, has there been a violation of the law?

5th. The law, being penal in its character, is to be construed strictly; Kent, and other elementary writers passim.

Statement of the case, and opinion delivered by McGirk, Judge.

In November, 1836, Russell brought an action on the case against Taylor, and declares that he was possessed

JUNE TERM
1837.

Russell v. Taylor.

of a certain slave in the State of Missouri, and that the said slave went and came to the said defendant, and the defendant wrongfully and unjustly received the slave, and then and there carried and conveyed him from the State of Missouri across the Mississippi, into the State of Illinois and elsewhere, beyond the said river, the said slave not then and there having any pass, or instrument in writing, from said Russell, or any other person, whereby the plaintiff has been deprived of services, and expended money to his damage, &c. The defendant pleaded not guilty. On this plea the cause was tried.

It was proved on the trial, that Taylor was the captain of a certain steam-boat called Utility, which traded up the Mississippi and Illinois rivers; that the mate of the boat brought the boy on board of the boat at St. Louis. The boy did not shew any pass, nor did the defendant ask for any, but the defendant shipped the slave one trip up the river, and on that trip landed on the east side of the Mississippi at a place called Alton, in Illinois, and when the boy was found on the boat at St. Louis, he was engaged to the defendant for another trip up the Illinois river. The circuit court instructed the jury that the plaintiff could not recover, and directed the jury to find for the defendant.

It appears from the argument, that this action is founded on the first section of the act of 1822, *concerning* slaves; R.,L. of 1825, p. 747. The act declares, "That any ferryman, or other person, who may be convicted of crossing any slave from this State across the Mississippi river, unless such slave have a pass, or permit, in writing, from his master, mistress, or employer, particularly directed to such ferryman, or other person, he shall forfeit and pay to the owner or employer for the use of the person injured, all such damages and costs which may accrue, to the owner or employer of such slave, and the value of such slave, in addition thereto, to be recovered by action on the case."

Mr. Geyer, for the plaintiff, insists the court erred in instructing the jury, that the plaintiff could not recover. The instruction is very broad, and certainly takes the whole case from the jury. I cannot perceive, from the record, on what ground the court went. I learn, however, from the points and arguments made by Mr. Hamilton, for the defendant, that as the 34th sec. of the act of 1804, revisal of 1825, page 745, provides for the case of steam-boat owners carrying away slaves from the State, and provides the penalty that the first act named applies

to ferrymen, and such other persons as may navigate such barks as are usually used to cross the Mississippi river.

It seems to me that all persons whatever who do the act are guilty of the offence. The offence prohibited is, crossing slaves to the east side of the Mississippi, without written leave of the owners to do so, no matter how the thing is performed. Ferrymen are mentioned, because they have generally the means in constant readiness to do the act.—They were therefore more prominent in the eye of the legislature than all other persons, and are forbidden to do the act. The owner of a steam-boat is a person other than a ferryman, and if he does the act through the instrumentality of the boat, he is not less guilty.— Transporting a slave across the Mississippi into a non-slaveholding State was the evil to be prevented by the act of 1822.

JUNE TERM
1837.

Russell v. Taylor.

Steamboat owners are embraced within the meaning of the act of 1822, sec. 1, (Rev. Co. of '25, p. 747) concerning slaves and an action on the case lies against them, as well as ferrymen, and owners of small craft, for violating its provisions.

The act of 1804, is intended to provide against the evil of owners and masters of all vessels carrying any slave out of the State on such vessels. If a slave be carried on such boat to the Yellow-Stone river to the State of Arkansas, or Red River of Louisiana, the person doing so, offends against the act of 1804.

To carry a slave out of the State on the vessels enumerated, offends against the 36th section. If it be done without crossing the Mississippi; if it be done by crossing the river on, or in, such vessel, then both the acts are violated. Can it be supposed that the legislature intended that if some humble ferryman canoe navigator, or a log or plank rafter, should cross a slave over to the east side of the Mississippi, without the permission of the owner, &c., that he should pay the value of the slave and the damages too? And that if the same act were done by a steam-boat captain, on his boat, he should only pay $150 as a penalty and the damages? I will not believe such was their intention.

No previous conviction in any other mode is necessary to sustain the action on the case under this statute.

It has been said by counsel, that the court below held there should have been a previous conviction of the defendant in some other mode, before the action arises to the plaintiff.*

Inasmuch, therefore, as the instruction of the court was too broad, and the law, as far as it has been presented in argument, is in favor of the plaintiff. I am of opinion the judgment of the circuit court ought to be reversed,

---

* It is the opinion of this court that the conviction mentioned in the act of 1822, means a common conviction in an action on the case as given by the act, and nothing more.—*Judges* M'GIRK and TOMPKINS.

and the cause remanded to that court for a new trial.

TOMPKINS J. · I concur in opinion that the judgment ought to be reversed, and it is reversed accordingly.